**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC. AND NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>REGGIE PET LLC,<br><br>Defendant. | C.A. No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Nutramax Laboratories, Inc. ("Nutramax Labs") and Nutramax Laboratories Veterinary Sciences, Inc. ("Nutramax Vet") (collectively, "Nutramax" or "Plaintiffs"), through their undersigned counsel, bring this action against Defendant Reggie Pet LLC ("Reggie Pet" or "Defendant"). In support of this Complaint, Nutramax alleges as follows:

## NATURE OF THE ACTION

1. Nutramax researches, develops, and sells high-quality, innovative health supplements. One of Nutramax's veterinarian-recommended and highly regarded animal health supplement products is Solliquin®. The Solliquin® formulation contains a unique synergistic combination of ingredients that supports calming behavior in dogs and cats, including L-theanine and extracts of *magnolia* and *phellodendron*.

2. Nutramax has numerous patents protecting its inventions related to its health supplement products, including Solliquin®. For example, Nutramax Labs is the rightful owner of United States Patent No. 12,194,011 ("the '011 Patent") (Exhibit 1), which is generally directed to combinations of L-theanine and extracts of *magnolia* and *phellodendron* and their use for reducing, ameliorating, or treating symptoms of anxiety in mammals. Nutramax Vet is a wholly

owned subsidiary of Nutramax Labs and distributes Solliquin® in the United States as the exclusive licensee of the ’011 Patent in the field of animal health supplements.

3. Reggie Pet is a competing pet supplement company that, after seeing the success of Nutramax’s Solliquin® products, began selling the Reggie Anytime Calming Chews (“Accused Products”) to relieve stress and anxiety in dogs. The Reggie Anytime Calming Chews contain the same synergistic combination of ingredients claimed in the ’011 Patent.

4. Reggie Pet is not authorized, and has never been authorized, to use the ’011 Patent. Thus, Reggie Pet has infringed and/or continues to infringe, directly and/or indirectly, the ’011 Patent by making, using, selling, offering to sell, and/or importing the Accused Products, and this Complaint is necessary to remedy such infringing conduct. Nutramax accordingly files this Complaint seeking a judgment of and relief for Reggie Pet’s infringement of the ’011 Patent.

## THE PARTIES

5. Plaintiff Nutramax Labs is a corporation organized and existing under the laws of the State of South Carolina. Nutramax Labs maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720.

6. Plaintiff Nutramax Vet is a corporation organized and existing under the laws of the State of South Carolina. Nutramax Vet maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720.

7. Defendant Reggie Pet LLC is a Delaware limited liability company with a registered agent at 251 Little Falls Drive, Wilmington, Delaware 19808. Reggie Pet advertises, promotes, offers for sale, and sells the Accused Products throughout the United States, including in this District.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. § 271, et seq.

9. This Court has personal jurisdiction over Reggie Pet because it is organized under the laws of Delaware. Additionally, Reggie Pet regularly conducts business in Delaware, including in this District, and purposefully avails itself of the privileges of conducting business in Delaware and this District.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) at least because Reggie Pet resides in this District based on its state of organization.

## FACTUAL BACKGROUND

11. Since at least as early as 1992, Nutramax, on its own and through its licensed affiliates and resellers, has sold its health supplement products across the United States through a diversified portfolio of well-recognized and widely trusted brands, including but not limited to its Solliquin® product line.

12. Nutramax's health supplement products are utilized to help support joint health, support liver health, support heart health, support intestinal functions, and provide calming support, among other uses.

13. Nutramax's health supplement products are widely regarded as the gold standard in the nutritional supplement industry because they are supported by research and studies, contain verified and validated active ingredients from reliable sources, and are manufactured in accordance with strict standards that ensure consumers receive a high-quality, safe, and effective product.

14. In fact, the active compounds used in its health supplement products adhere to strict purity and quality standards, which differentiates Nutramax's products from many other products on the market that use inferior ingredients from unverified suppliers. The specific compounds and ingredients used in Nutramax's health supplement products have been researched and tested, and Nutramax has taken substantial steps to ensure that its products are of the highest quality. Using a quality management system, Nutramax maintains strict control over each step of the manufacturing process.

15. Over the years, Nutramax has spent millions of dollars researching and developing its innovative health supplement products and devotes significant financial resources each year to marketing.

16. By virtue of Nutramax's commitment to the development and testing of its products, Nutramax has become acclaimed for its high-quality health supplement products. Nutramax's products are some of the most well-known and respected in the industry, and many are the most frequently recommended products by veterinarians in their respective categories.

17. In addition, Nutramax's extensive investment in research and development of innovative health supplement products has led to significant innovation in the health supplement industry. This innovation has been recognized by the U.S. Patent and Trademark Office, which has issued numerous patents to Nutramax that cover various health supplement products.

18. Among Nutramax's patent-protected products is its Solliquin® line of products. Nutramax's Solliquin® products contain a proprietary combination of L-theanine and *magnolia* and *phellodendron* extracts that have been scientifically researched and shown to reduce behaviors associated with stress.

19. The Solliquin® product line currently includes the Solliquin® Behavioral Health Supplement Calming Support for Cats and Dogs under 30 pounds ("Solliquin® for Small/Medium Dogs and Cats") and the Solliquin® Behavioral Health Supplement Calming Support for Cats and Dogs over 31 pounds ("Solliquin® for Large Dogs").

20. The effectiveness of this Solliquin® formulation has been extensively studied. Such studies[1] show that amounts and ratios of ingredients present in Solliquin® are synergistically effective in modulating at least one neurotransmitter and reducing or ameliorating symptoms of anxiety.

**<u>OVERVIEW OF THE '011 PATENT</u>**

21. United States Patent No. 12,194,011 is entitled "Compositions Comprising Theanine, Magnolia, and Phellodendron," and names Todd Henderson, David Griffin, and David Bledsoe as the inventors. The '011 Patent was duly and legally issued on January 14, 2025. A true and correct copy of the '011 Patent is attached as Exhibit 1.

22. Plaintiff Nutramax Labs owns, by assignment, all right, title, and interest in and to the '011 Patent, and together with Nutramax Vet holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

23. Pursuant to a written agreement between Plaintiff Nutramax Labs and Plaintiff Nutramax Vet, Plaintiff Nutramax Vet holds the exclusive rights to make, use, offer for sale, and sell in the United States, and to import into the United States, products practicing the '011 Patent

---

[1] Examples include Landsberg et al., *The Effects of a Nutritional Supplement (Solliquin) in Reducing Fear and Anxiety in a Laboratory Model of Thunder-induced Fear and Anxiety*, PROCEEDINGS OF THE 11TH INTERNATIONAL VETERINARY BEHAVIOR MEETING (2017); DePorter et al., *Case Report Series of Clinical Effectiveness and Safety of Solliquin® for Behavioral Support in Dogs and Cats*, VETERINARY BEHAVIOR SYMPOSIUM (2016); and the studies reported in the '011 Patent.

in the field of animal health supplements, as well as the exclusive rights to enforce the '011 Patent jointly with Nutramax Labs and to collect damages for any past, current, and future infringement.

**REGGIE PET'S INFRINGING PRODUCT AND CONDUCT**

24. Reggie Pet has made, used, imported, sold, and/or offered for sale in the United States, and/or continues to make, use, import, sell, and/or offer for sale in the United States—and/or has induced and/or continues to induce others to make, use, import, sell, and/or offer for sale in the United States—the Reggie Anytime Calming Chews ("the Accused Products"). For example, Reggie Pet has offered and/or continues to offer its Reggie Anytime Calming Chews for sale on its own website, through Chewy, and through Amazon.

25. The Reggie Anytime Calming Chews contain a combination of L-theanine and *magnolia* and *phellodendron* extracts. According to Reggie Pet's own product listings, each chew contains 100 mg of L-theanine and 174 mg of a "[p]roprietary [b]lend of *Magnolia Officinalis* Bark and *Phellodendron Amurense* Bark Extract."[2]

26. On information and belief, these amounts of L-theanine and *magnolia* and *phellodendron* extracts in the Reggie Anytime Calming Chews are synergistically effective to modulate one or more neurotransmitters and reduce or ameliorate symptoms of anxiety.

27. For example, Reggie Pet has plainly asserted that the ingredients in the Reggie Anytime Calming Chews—which, as stated above, include L-theanine and *magnolia* and *phellodendron* extracts—together form a "[v]et-approved, [s]cience-backed solution" that is "[m]ade with Magnolia Bark, Phellodendron Bark and L-Theanine to help maintain calm behavior, especially during storms, fireworks, and travel." Reggie Pet likewise advertises that "[e]ach chew

---

[2] *Anytime Calming Chews*, REGGIE PET, *available at* https://reggie.com/products/anytime-calming?srsltid=AU7gw4VNs_jbv-8oPpZIeyn2rkbcaFmlY-1CelxkSZbY2WlgxEQJyTrA (last visited Oct. 9, 2026).

contains L-Theanine (100mg) plus a proprietary blend of Magnolia Bark & Phellodendron Bark (174mg) to naturally promote calmness and balanced behavior," and that the Accused Products are "[f]ormulated with natural ingredients like L-theanine, magnolia, and phellodendron bark to support calm behavior in dogs."[3]

# Anytime Calming Chews

4.83/5

Reggie Anytime Calming Chews for dogs support normal stress, nervousness, and hyperactivity. Made with **Magnolia Bark**, **Phellodendron Bark** and **L-Theanine** to help maintain calm behavior, especially during storms, fireworks, and travel. Vet-approved, Science-backed solution.

## About this item

- NATURAL CALMING FOR DOGS – Reduce stress, hyperactivity, and unwanted behaviors without drowsiness. Perfect for separation anxiety, loud noises, car rides, vet visits, or daily relaxation support.
- SCIENCE-BACKED INGREDIENTS – Each chew contains L-Theanine (100mg) plus a proprietary blend of Magnolia Bark & Phellodendron Bark (174mg) to naturally promote calmness and balanced behavior.

Reggie Anytime Peanut and Pork Liver Flavored Soft Chew Calming Supplement for Dogs is the perfect solution to promote relaxation without sedation. These vet-approved chews are formulated with natural ingredients like L-theanine, magnolia, and phellodendron bark to support calm behavior in dogs. The delicious peanut butter flavor, made with peanut flour and pork liver, makes it easy to give your dog their daily dose of calm. Say goodbye to struggling with pills or unpleasant liquids and hello to a gentle and side effect-free way to soothe your dog's anxiety and stress.

---

[3] *Anytime Calming Chews*, REGGIE PET, *available at* https://reggie.com/products/anytime-calming?srsltid=AU7gw4VNs_jbv-8oPpZIeyn2rkbcaFmlY-1CelxkSZbY2WlgxEQJyTrA (last visited Oct. 9, 2026); *Reggie Anytime Calming Chews for Dogs*, AMAZON, *available at* https://www.amazon.com/dp/B0CTXRVJ1N?plpRedirect=mhFallback&th=1 (last visited Oct. 9, 2026); *Reggie Anytime Calming Chew Peanut Butter & Pork Flavored Soft Chew Calming Supplement for Dogs*, CHEWY, *available at* https://www.chewy.com/reggie-anytime-peanut-flour-pork/dp/3504230 (last visited Oct. 9, 2026).

28. These statements tie the claimed calming effect not to any single ingredient but to the specific amounts of L-theanine and *magnolia* and *phellodendron* extracts in each chew, operating together. This amounts to an assertion by Reggie Pet that the amounts and ratio of these ingredients in the Reggie Anytime Calming Chews are effective in combination to reduce symptoms of anxiety.

29. Reggie Pet has further advertised that the reduced symptoms of anxiety from administering the Reggie Anytime Calming Chews are attributable to the ingredients' effects on brain chemistry. Specifically, Reggie Pet states that L-theanine "[p]romotes relaxation and inhibits anxious responses by blocking stress receptors, increasing serotonin, and encouraging relaxation pathways in the brain"; that magnolia bark "[e]nhances soothing receptors in the brain to promote calmness without sedation, helping manage feelings of fear, stress, and anxiety"; and that *phellodendron* "[r]educes anxiety and restlessness by inhibiting stress receptor release, which enable anxious bodily responses."[4]




30. Reggie Pet also instructs users to administer the Reggie Anytime Calming Chews at specified, weight-based dosages—one chew for dogs under 25 pounds, two chews for dogs from

[4] *Anytime Calming Chews*, REGGIE PET, *available at* https://reggie.com/products/anytime-calming?srsltid=AU7gw4VNs_jbv-8oPpZIeyn2rkbcaFmlY-1CelxkSZbY2WlgxEQJyTrA (last visited Oct. 9, 2026).

25 to 75 pounds, and three chews for dogs over 75 pounds—and directs that, "[f]or dogs with frequent anxiety, our chews work best when given daily for at least 30–45 days," or, for situational anxiety, "30–60 min before the stressful event."[5]

> **How to Use** —
>
> For dogs with frequent anxiety, our chews work best when given daily for at least 30-45 days. For situational anxiety, the chews may be used as-needed (e.g., during storms). In this case, give the chews 30-60 min before the stressful event.

31. Individually, and taken together, the statements provided above are an explicit acknowledgement by Reggie Pet that the amounts and ratios of L-theanine and extracts of *magnolia* and *phellodendron* in the Reggie Anytime Calming Chews are synergistically effective to modulate at least one neurotransmitter (e.g., serotonin) and reduce symptoms of anxiety, such as stress.

32. On March 6, 2026, Nutramax sent correspondence to Reggie Pet, informing it that Reggie Pet infringes the '011 Patent by making, using, importing, selling, and/or offering for sale in the United States the Reggie Anytime Calming Chews. Nutramax requested that Reggie Pet cease and desist all infringing activity.

33. Reggie Pet's counsel responded to Nutramax's letter on May 15, 2026, thereby acknowledging receipt. The letter did not dispute that Reggie Pet had sold Reggie Anytime Calming Chews that included the ingredients identified above.

34. Nutramax sent correspondence to Reggie Pet on September 22, 2026, reiterating its belief that the '011 Patent is valid and infringed by Reggie Pet. Nutramax again requested that Reggie Pet cease and desist all infringing activity.

---

[5] *Id.*

35. Counsel for Reggie Pet acknowledged that correspondence on September 23, 2026, but did not provide a substantive response until October 20, 2026, after Nutramax informed Reggie Pet earlier that day it intended to file suit. Reggie Pet did not agree to cease its infringing activity.

## GENERAL ALLEGATIONS RELATED TO INFRINGEMENT

36. Reggie Pet has infringed and/or continues to infringe, directly and/or indirectly, at least one claim of the '011 Patent by engaging in acts constituting infringement under 35 U.S.C. §§ 271(a), (b), (c) and/or (f), including but not limited to one or more of making, using, selling, offering for sale, importing, exporting and/or inducing and/or contributing to infringement by others, the Accused Products in this District and elsewhere in the United States.

37. As a result of Reggie Pet's infringement, Nutramax has suffered and/or will continue to suffer harm in the form of reasonable royalties and/or lost profits. Nutramax seeks damages for infringing acts beginning as early as six years before the filing of this Complaint.

38. Nutramax also seeks an injunction prohibiting further acts of infringement. Each of Reggie Pet's acts of infringement has caused and/or will continue to cause Nutramax irreparable harm for which there is no adequate remedy at law. Such injunctive relief would not disserve the public interest, and is warranted when considering the balance of the equities.

39. Reggie Pet had actual or constructive knowledge and notice of infringement as to the '011 Patent. For example, Reggie Pet is a direct competitor of Nutramax in the pet supplement space. Further, the Solliquin® products are marked with the '011 Patent number. Nutramax also provided notice of the '011 Patent and Reggie Pet's infringement thereof by correspondence dated March 6, 2026 and September 22, 2026, as detailed above. As such, Reggie Pet knew, should have known, or was willfully blind to the existence of the '011 Patent at the time of Reggie Pet's infringing acts.

40. Reggie Pet's infringement of the '011 Patent has been, and/or continues to be, willful because Reggie Pet has committed and/or continues to commit acts of infringement even though Reggie Pet knew or should have known that its actions constitute an unjustifiably high risk of infringement. For example, Reggie Pet has continued to make, use, sell, offer for sale, and/or import that Accused Products after receiving Nutramax's correspondence identifying the '011 Patent and Reggie Pet's infringement thereof.

41. Reggie Pet's infringement of the '011 Patent has been, and/or continues to be, without permission, consent, authorization or license.

## COUNT I: INFRINGEMENT OF THE '011 PATENT

42. Nutramax incorporates the allegations of all the foregoing paragraphs as if fully restated herein.

43. Reggie Pet has infringed, contributed to the infringement of and/or induced infringement—and/or continues to infringe, contribute to the infringement of and/or induce infringement—of the '011 Patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Products that are covered by one or more claims of the '011 Patent.

44. The Accused Products directly infringe, literally and/or through the doctrine of equivalents, one or more claims of the '011 Patent under 35 U.S.C. § 271(a). Reggie Pet has made, used, sold, offered for sale, and/or imported into this District and elsewhere in the United States—and/or continues to make, use, sell, offer for sale, and/or import in this District and elsewhere in the United States—the Accused Products and thus directly infringes claims of the '011 Patent.

45. As illustrated in Exhibit 2, which is incorporated here by reference, the Accused Products infringe at least Claims 1–10 and 13–20 of the '011 Patent because they include the claimed synergistic combination of ingredients recited in the Claims.

46. Reggie Pet also has indirectly infringed and/or continues to indirectly infringe claims of the ’011 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Reggie Pet’s distributors, retailers, and customers, in this District and elsewhere in the United States. For example, Reggie Pet’s retailers have directly infringed and/or continue to directly infringe through their sale of the Accused Products, and its customers have directly infringed and/or continue to directly infringe through use of the Accused Products. Reggie Pet has induced and/or continues to induce this direct infringement through its affirmative acts of manufacturing, selling, distributing and/or otherwise making available the Accused Products, and providing instructions, documentation, marketing, advertisements and other information to retailers and customers suggesting they use the Accused Products in an infringing manner. As a result of Reggie Pet’s inducement, Reggie Pet’s customers have used and/or continue to use the Accused Products in the way Reggie Pet intended and/or still intends, and have directly infringed and/or continue to directly infringe the ’011 Patent. Reggie Pet has performed and/or continues to perform these affirmative acts with knowledge of the ’011 Patent and with the intent, or willful blindness, that the induced acts directly infringe the ’011 Patent.

47. Reggie Pet also has indirectly infringed and/or continues to indirectly infringe claims of the ’011 Patent as provided in 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers, in this District and elsewhere in the United States. Reggie Pet’s affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products, and causing the Accused Products to be manufactured, used, sold and offered for sale have contributed to and/or continue to contribute to Reggie Pet’s retailers’ and customers’ use of the Accused Products, such that the ’011 Patent has been and/or continues to be directly infringed. The Accused Products are material to the invention of the ’011 Patent and are

not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Reggie Pet to be especially made or especially adapted for use in infringement of the ’011 Patent. Reggie Pet has performed and/or continues to perform these affirmative acts with knowledge of the ’011 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’011 Patent.

48. Reggie Pet has been aware of the ’011 Patent and its infringement thereof at least as of March 6, 2026.

49. Reggie Pet’s acts of infringement have caused damage to Nutramax. Nutramax is entitled to recover from Reggie Pet the damages sustained by Nutramax as a result of its wrongful acts in an amount subject to proof at trial.

50. Nutramax provides the foregoing explanation of infringement with regard to exemplary claims compared to the exemplary Accused Products and exemplary functionalities. Nutramax reserves the right to present additional or alternative explanations of infringement for the claims and functionalities and for other claims and functionalities of the Accused Products.

## DEMAND FOR JURY TRIAL

Nutramax hereby demands a trial by jury for any and all issues triable.

## PRAYER FOR RELIEF

WHEREFORE, Nutramax asks the Court for an order granting the following relief:

A. A judgment in favor of Nutramax that Reggie Pet has infringed, either literally and/or under the doctrine of equivalents, the ’011 Patent;

B. An award of damages adequate to compensate Nutramax for infringement of the ’011 Patent by Reggie Pet, in an amount to be proven at trial, including supplemental post-verdict damages together with pre-judgment and post-judgment interest and costs, until such time as Reggie Pet ceases its infringing conduct;

C. A judgment and order finding that Reggie Pet’s infringement has been willful;

D. A permanent injunction prohibiting Reggie Pet from further acts of infringement;

E. Enhanced damages for willful infringement pursuant to 35 U.S.C. § 284;

F. A judgment and order declaring that this is an exceptional case within the meaning of 35 U.S.C. § 285;

G. The costs of this action as well as reasonable attorneys' fees provided by 35 U.S.C. § 285; and

H. All other relief, in law or equity, to which Nutramax is entitled.

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
**RICHARDS LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Counsel for Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.*

OF COUNSEL:

Natalie C. Clayton
natalie.clayton@alston.com
**ALSTON & BIRD LLP**
90 Park Avenue, 15th Floor
New York, NY 10016
(212) 210-9400

Dated: October 26, 2026